IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)

**CEM OZCAN**
Mehmet Ali Kantarcı Sk. No:14 D:8
Kadikoy/Istanbul 34726, Turkey

    *Plaintiff*,

v.

**FAZLI YURTER OZCAN**
15705 Rothschild Court
Haymarket, VA 20169

    *Defendant*.

Civil Action No. 1:24-cv-1239

## COMPLAINT

Plaintiff, Cem Ozcan ("Cem"), through undersigned counsel, hereby sues Defendant, Fazli Yurter Ozcan ("Fazli"), for breach of contract and fraud, stating:

## INTRODUCTION

1. This is a breach of contract and fraud action. The parties are former business partners, and members of a non-party LLC. Through a written contract, Plaintiff agreed to sell his shares in that LLC to Defendant. However, Defendant refused to pay Plaintiff the agreed to purchase price by the contract's closing date. After Plaintiff's requests to remedy were rebuffed, this action resulted. Additionally, Defendant forged Plaintiff's name on a personal guaranty in connection with a financing transaction, resulting in Plaintiff becoming a defendant in a lawsuit after the LLC defaulted on the loan.

## THE PARTIES

2. Plaintiff, Cem Ozcan, is a Turkish citizen who currently resides at Fenerbahce mh. Mehmet Ali Kantarci sk. No14A D8, Kadikoy/Istanbul 34726, Turkey. Cem holds a U.S. Visa, and has business dealings in the United States of America.

3. Defendant, Fazli Yurter Ozcan, is a dual citizen of the United State and Turkey, who resides at 15705 Rothschild Court, Haymarket, VA 20169.

4. Cem and Fazli (collectively, the "Parties") have been business partners, including as owners/members of the member-managed Washington Advisory Group, LLC ("WAG"), a District of Columbia limited liability company registered to do business in the Commonwealth of Virginia. WAG's operative Operating Agreement provides that its principal place of business is 15705 Rothschild Court, Haymarket, VA 20169, and designates Fazli as its Resident Agent.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000 and that Cem is a citizen of a foreign state, while Fazli is a citizen of the Commonwealth of Virginia.

6. Venue is proper in this Court under 28 U.S.C. § 1391, as Fazli is a citizen of Prince William County, Virginia, and a substantial part of the events giving rise to this action occurred in this judicial district.

## FACTS RELEVANT TO ALL COUNTS

7. In March 2022, the Parties signed the Amended and Restated Operating Agreement of Washington Advisory Group, LLC (the "Operating Agreement"). Exhibit A.

8. Under the Operating Agreement, WAG is: a member-managed LLC; organized under District of Columbia law; registered to do business in the Commonwealth of Virginia; and was formed to advise and consult regarding the steel industry. *See generally* Ex. A.

9. Under the Operating Agreement, WAG had three members: Cem; Fazli; and Serdar Cobanoglu. Only Cem and Fazli contributed capital to WAG, with Cem contributing $1,050,000 pursuant to an EB-5 investment visa program, and Fazli contributing $231,950. Ex. A.

10. Under the Operating Agreement, Cem held 40% of WAG's Membership Interests, Fazil owned 40%, and Serdar Cobanoglu owned the final 20%. Ex. A.

*Fazli fails to perform his end of a sales contract.*

11. By the fall of 2023, Fazli wanted to purchase Cem's Membership Interests in WAG. To do this, the Parties jointly negotiated, drafted, and signed a Membership Interest Subscription Agreement (the "Contract"), to be governed by Virginia law. Exhibit B; *id.* at Sec. 7; Sec. 15. WAG approved the Contract through a Written Consent of the Members in Lieu of Meeting dated October 31, 2023. Exhibit C.

12. The Contract's Effective Date was October 31, 2023. Ex. B. Under the Contract's terms, Cem agreed to sell his 40% ownership of WAG to Fazli, and Fazli, in exchange, would pay Cem $1,050,000. *See* Ex. B, Sec. 2 (pasted below).

> Purchase and Sale. Upon the terms and subject to the conditions of this Agreement, the Seller agrees to sell to Buyer, and Buyer agrees to purchase from the Seller, at the Closing, forty percent (40%) of the total membership interests of the Company (the "Membership Interests"). The Membership Interests shall be purchased by Buyer for a total purchase price of $1,050,000 (the "Purchase Price").

13. Cem and Fazli agreed that the Contract's Closing Date would be within six months of its Effective Date (i.e., by April 30, 2024), or another time mutually agreed to by the Parties. Ex. B, Sec. 3 (pasted below). At the Closing Date, Fazli would pay the purchase price to Cem, and WAG would deliver a certificate reassigning Cem's Membership Interests to Fazli.

> Closing; Deliveries. The Buyer shall deliver the Purchase Price by wire transfer or check to the account designated by the Seller. The time and date of such delivery and payment of the Purchase Price shall be within six (6) months of the Effective Date or such other date or time as the parties shall mutually agree (such time being

referred to herein as the "Closing Date," and the closing of the transactions contemplated by this Agreement, the "Closing").

14. Fazli did not pay Cem the agreed-to-purchase price in exchange for Cem's Membership Interests in WAG within six months of the Contract's Closing Date, and has failed to do so to date.

15. After Cem's requests that Fazli cure his breaches of the Contract were rebuffed, this action resulted. Cem is and has been ready, willing and able to perform under the Contract.

*The Personal Guaranty Forgery*

16. In addition to the above, in June 2024, Cem was made aware of an action brought by Mitsubishi HC Capital America, Inc., successor by merger to ENGS Commercial Finance Co., against WAG, Cem and Fazli in the Circuit Court of Prince William County, Virginia (the "Mitsubishi Complaint").

17. According to the Mitsubishi Complaint, Mitsubishi entered into a Commercial Finance Agreement in February 2023, in which Mitsubishi financed WAG's purchase of equipment, with WAG agreeing to repay Mitsubishi via 84 monthly payments.

18. The Mitsubishi Complaint alleges that, "as consideration and inducement for" Mitsubishi "to enter into the" Commercial Finance Agreement, both Cem and Fazli separately signed and "executed a Personal Guaranty [] in which CEM" and Fazli separately "guaranteed the performance and payment of all obligations under the" Commercial Finance Agreement "and any other financial obligations incurred by WAG to" Mitsubishi.

19. The Mitsubishi Complaint alleges that WAG is in default of its obligations under the terms of the Commercial Finance Agreement, and seeks remedy.

20. Cem was not aware of the Mitsubishi Commercial Finance Agreement when it was signed, and neither signed nor gave anyone permission to sign the Personal Guaranty on his behalf. Before, during, and following the purported execution of the Personal Guaranty, Cem was residing

4

in Turkey and was not in the United States.

21. On information and belief, Fazli forged Cem's signature on the Personal Guaranty.

22. Cem never received, reviewed, approved, or signed, and was unaware of, a credit application or supplied any personal or business information to Engs Commercial Finance Co. related to the Guaranty or Contract.

23. As a result of Fazli's forgery, Cem has been required to obtain legal counsel to address Mitsubishi's claims against him, and worked to clear Mitsubishi's negative report on Cem's credit rating.

## COUNT I
### (Breach of Contract:  Express Terms of the Agreement)

24. Cem hereby incorporates by reference, as if fully set forth herein, all of the allegations contained in the preceding numbered paragraphs.

25. The Contract is a valid and binding between Cem and Fazli.

26. Cem has performed, and/or is ready, willing, and able to perform his obligations under the parties' Contract to date.

27. Fazli has refused to meet his obligations under the Contract, including those in Section 2, by failing and refusing to pay the purchase price for Cem's Membership Interests in WAG by the agreed to Closing Date.

28. As a direct and proximate result of Fazli's breach of the Contract, Cem has been deprived of the benefit of its bargain: the moneys Fazli agreed to pay him in exchange for Cem's Membership Interests in WAG.

29. As a consequence of Fazli's breach, Cem has suffered injury in the form of loss of the benefit of its bargain, in the total amount of $1,050,000.

## COUNT II
### (Fraud—Forgery)

30. Cem hereby incorporates by reference, as if fully set forth herein, all of the allegations contained in paragraphs 1 through 23.

31. Cem asserts a claim for common law fraud against Fazli due to Fazli's forgery of Cem's signature in the Personal Guaranty.

32. Cem never signed a copy of the Personal Guaranty in connection with the Commercial Finance Agreement with Mitsubishi.

33. On information and belief, Fazli forged Cem's signature to the Commercial Finance Agreement, and falsely presented it to Mitsubishi in order to obtain Mitsubishi's consent to the Commercial Finance Agreement.

34. Fazli did so with intent to deceive, as Mitsubishi relied on Cem's forged Personal Guaranty in order to execute the Commercial Finance Agreement, and to defraud Cem by making him a guarantor without his knowledge, consent or approval.

35. As a direct and proximate result of Fazli's forgery, Cem has been damaged as a result of Fazli's forgery, and has both been required to obtain legal counsel to address the Mitsubishi Complaint, and has incurred other damages.

36. As a direct and proximate result of Fazli's forgery, Cem will suffer additional damages if he is improperly held liable as to any damages claim concerning under the Mitsubishi Complaint.

WHEREFORE, Plaintiff Cem Ozcan respectfully requests that this Honorable Court enter its Order directing the entry of judgment in its favor and against Defendant Fazli Yurter Ozcan, awarding Cem:

a) Specific performance of the Contract between the Parties, including but not limited to Payment of the Purchase Price due to Cem;

b) That Cem recover damages from Fazli in an amount greater than $1,000,000, in an amount to be proven at trial;

c) Compensation of Cem's reasonable attorney fees and costs;

d) Prejudgment interest, costs, and disbursements as appropriate; and

e) Such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted,

LERCH, EARLY & BREWER, CHARTERED

By: _____

Jessica B. Summers, VSB84513
7600 Wisconsin Avenue, 7th Floor
Bethesda, Maryland  20814
Telephone:    (301) 657 3442
Facsimile:     (301) 986 0332
jbsummers@lerchearly.com
*Attorneys for Plaintiff*